UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
LC WHITE PLAINS RETAIL, LLC,       :

                     Plaintiff,     :        08 Civ. 6991 (KMK) (LMS)

          -against-          :      **ANSWER AND**
                                           **COUNTERCLAIMS**
FILENE'S BASEMENT, INC.,        :

                    Defendant.   :
-------------------------------------------------------------x

        Defendant Filene's Basement, Inc. ("Filene's Basement" or "Defendant"), by and through its undersigned attorneys, as and for its Answer and Counterclaims to the Verified Complaint ("Complaint") of Plaintiff LC White Plains Retail, LLC ("LC White Plains" or "Plaintiff"), hereby denies all allegations of the Complaint except those specifically admitted below, and more specifically avers and alleges as follows:

        1.     Filene's Basement lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

        2.     Filene's Basement admits that it is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, but otherwise denies the allegations contained in Paragraph 2 of the Complaint.

        3.     Filene's Basement admits the allegations contained in Paragraph 3 of the Complaint.

        4.     Filene's Basement admits the allegations contained in Paragraph 4 of the Complaint.

## AS AND FOR A FIRST CAUSE OF ACTION

5.      Filene's Basement repeats, reiterates and incorporates by reference herein, with the same force and effect as if set forth at length herein, each of the responsive averments contained in Paragraphs 1 through 4 of this Answer, above.

6.      Filene's Basement admits that, on or about December 24, 2003, it executed a Lease Agreement, made as of January 1, 2004, by and between Filene's Basement, as Tenant, and LC White Plains, as Landlord (hereinafter the "Lease"), but Filene's Basement otherwise denies the allegations contained in Paragraph 6 of the Complaint, which purport to characterize the terms and legal effect of the Lease, and respectfully refers the Court to the provisions of the Lease itself for the most complete and accurate recitation of its terms and legal effect.

7.      Filene's Basement denies the allegations contained in Paragraph 7 of the Complaint, which purport to characterize the terms and legal effect of the Lease, and respectfully refers the Court to the provisions of the Lease itself for the most complete and accurate recitation of its definitions, terms and legal effect.

8.      Filene's Basement denies the allegations contained in Paragraph 8 of the Complaint, which purport to characterize the terms and legal effect of the Lease, and respectfully refers the Court to the provisions of the Lease itself for the most complete and accurate recitation of its definitions, terms and legal effect.

9.      Filene's Basement denies the allegations contained in Paragraph 9 of the Complaint, which purport to characterize the terms and legal effect of the Lease, and respectfully refers the Court to the provisions of the Lease itself for the most complete and accurate recitation of its definitions, terms and legal effect.

2

10.     Filene's Basement denies the allegations contained in Paragraph 10 of the Complaint, which purport to characterize the terms and legal effect of the Lease, and respectfully refers the Court to the provisions of the Lease itself for the most complete and accurate recitation of its definitions, terms and legal effect.

11.     Filene's Basement denies the allegations contained in Paragraph 11 of the Complaint.

12.     Filene's Basement states that the allegations contained in Paragraph 12 of the Complaint purport to plead legal conclusions and/or other non-factual matters as to which no responsive averment is required, but to the extent a responsive averment is required, Filene's Basement denies that it has breached or is in default under the terms of the Lease, and avers that it otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Filene's Basement denies the allegations contained in Paragraph 13 of the Complaint.

## AS AND FOR A SECOND CAUSE OF ACTION

14.     Filene's Basement repeats, reiterates and incorporates by reference herein, with the same force and effect as if set forth at length herein, each of the responsive averments contained in Paragraphs 1 through 13 of this Answer, above.

15.     Filene's Basement admits that the allegations contained in Paragraph 15 of the Complaint purport to excerpt language contained in Section 37.01 of the Lease, but respectfully refers the Court to the provisions of Section 37.01 of the

Lease, and other provisions of the Lease as well, for the most complete and accurate recitation of its definitions, terms and legal effect.

16.    Filene's Basement admits, upon information and belief, that LC White Plains has entered into an agreement to lease space within the Center for use as a Nordstrom Rack junior department store in violation of express terms of the Lease, but Filene's Basement otherwise avers that it lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint.

17.    Filene's Basement admits that it has claimed that LC White Plains has materially breached the Lease, including the covenant contained in Section 37.01 thereof, by virtue of its having entered into an agreement to lease space within the Center for use as a Nordstrom Rack junior department store, and Filene's Basement further admits that it has claimed that this material breach entitled Filene's Basement to cancel the Lease.  Filene's Basement otherwise denies the allegations contained in Paragraph 17 of the Complaint.

18.    Filene's Basement states that the allegations contained in Paragraph 18 of the Complaint purport to plead legal conclusions and/or other non-factual matters as to which no responsive averment is required, but to the extent a responsive averment is required, Filene's Basement denies the allegations contained in Paragraph 18 of the Complaint.

19.    Filene's Basement states that the allegations contained in Paragraph 18 of the Complaint purport to plead legal conclusions and/or other non-factual matters as to which no responsive averment is required, but to the extent a

4

responsive averment is required, Filene's Basement denies the allegations contained in Paragraph 19 of the Complaint.

20.    Filene's Basement states that the allegations contained in the unnumbered paragraph of the Complaint beginning with "WHEREFORE," and each of the ensuing numbered paragraphs, purport to plead the relief requested by LC White Plains and/or other non-factual matters as to which no responsive averment is required, but to the extent a responsive averment is required, Filene's Basement denies the allegations contained in each of those paragraphs, and specifically denies that LC White Plains is entitled to the relief requested therein or any other relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

21.    Plaintiff's allegations fail to state any claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

22.    Plaintiff's claims for relief are barred, in whole or in part, by the doctrines of waiver, consent, estoppel, laches, and/or ratification.

## THIRD AFFIRMATIVE DEFENSE

23.    Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

24.    Plaintiff's claims for relief are barred, in whole or in part, by Plaintiff's own material breaches of the Lease.

## FIFTH AFFIRMATIVE DEFENSE

25.     Plaintiff's claims for relief are barred, in whole or in part, by the terms of the Lease.

## SIXTH AFFIRMATIVE DEFENSE

26.     Plaintiff's claims for relief are barred, in whole or in part, by the doctrines of payment, accord and satisfaction.

## SEVENTH AFFIRMATIVE DEFENSE

27.     Plaintiff's claims for relief are barred, in whole or in part, by a failure of consideration.

## EIGHTH AFFIRMATIVE DEFENSE

28.     Plaintiff's claims for relief are barred, in whole or in part, by failure of a condition precedent.

## NINTH AFFIRMATIVE DEFENSE

29.     Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of excused performance.

## TENTH AFFIRMATIVE DEFENSE

30.     Plaintiff's recovery, if any, must be eliminated or reduced on the ground, and to the extent, that Plaintiff has failed to mitigate its alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE

31.     Defendant is entitled to a set-off of any judgment taken against it as a result of, and in an amount equal to, monies owed by Plaintiff to Defendant on account of, among other things: overpayments of Rent; overpayments of Real Estate Taxes (including, without limitation, payments made on account of PILOT and payments

6

made on account of real estate taxes other than PILOT, *e.g.*, sewer, refuse tax, BID fees, etc.); overpayments of Common Area Maintenance Costs; and the Tenant Reimbursement Payment provided for in Section 45 of the Lease (including unpaid installments thereof that are currently due or past due and owing, and installments thereof that will hereafter become due and owing).

## COUNTERCLAIMS

Filene's Basement Inc. ("Filene's Basement" or "Counterclaim Plaintiff"), by and through its undersigned attorneys, as and for its counterclaims against LC White Plains Retail LLC ("LC White Plains" or "Counterclaim Defendant"), hereby alleges as follows:

### NATURE OF THE COUNTERCLAIMS

1.    Through its counterclaims, Filene's Basement seeks a declaration that LC White Plains materially breached a certain Lease Agreement, made as of January 1, 2004 by and between Filene's Basement, as Tenant, and LC White Plains, as Landlord (hereinafter the "Lease"), pursuant to which Filene's Basement agreed to lease from LC White Plains approximately 77,468 square feet of retail space (hereinafter the "Leased Premises") in the shopping Center known as City Center at White Plains, New York (hereinafter the "Center").  More specifically, Filene's Basement seeks a declaration that: (i) LC White Plains materially breached the Lease – as well as LC White Plains' implied duties of good faith and fair dealing – when, in direct contravention of various express covenants and a clear "restricted use" provision contained in the Lease, LC White Plains entered into an agreement to lease approximately 35,000 square feet of adjacent retail space in the Center for use as a Nordstrom Rack, one of Filene's Basement's chief and principal competitors; and (ii) as a result of LC White Plains's material and uncured breach(es), Filene's Basement's election to cancel the Lease and pay alternative rent in accordance with the express terms of the Lease was both valid and lawful.

2.    In addition, Filene's Basement seeks to recover substantial monetary damages it was forced to incur in connection with, and as a direct and

8

proximate result of, LC White Plains's material breach(es) of the Lease and the resultant

liquidation and closure of Filene's Basement operations in and on the Leased Premises.

     3.      Finally, Filene's Basement seeks to recover substantial

overpayments of rent, common area maintenance charges, and real estate taxes that

Filene's Basement made to LC White Plains during the term of the Lease, which

overpayments have, to date, not been returned by LC White Plains, despite Filene's

Basement's demand for the same.

## PARTIES

     4.      Counterclaim Plaintiff Filene's Basement is, and at all relevant

times was, a corporation duly organized and existing under the laws of the State of

Delaware, with its principal place of business at 25 Corporate Drive, Suite 400,

Burlington, Massachusetts 01803.

     5.      Filene's Basement is, and at all relevant times was, duly authorized

to do business in the State of New York.

     6.      Upon information and belief, Counterclaim Defendant LC White

Plains is, and at all relevant times was, a limited liability company duly organized and

existing under the laws of the State of New York, with its principal place of business at

115 Stevens Avenue, Valhalla, New York 10595.

     7.      Upon information and belief, LC White Plains is, and at all

relevant times was, duly authorized to transact business in the State of New York, and

upon information and belief, LC White Plains actually does, and at all relevant times

actually did, transact business in the State out of the office it maintains in Valhalla, New

York.

## JURISDICTION AND VENUE

8.      These counterclaims are asserted pursuant to Rule 13 of the

Federal Rules of Civil Procedure.

9.      This Court has original subject matter jurisdiction over these

counterclaims pursuant to 28 U.S.C. § 1332 because there is complete diversity of

citizenship between Filene's Basement and Defendant LC White Plains.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because

a substantial part of the events or omissions giving rise to these counterclaims occurred in

this judicial district.

## FACTUAL ALLEGATIONS

11.      On or about December 24, 2003, Filene's Basement, through its

then-Vice Chairman, executed the Lease.

12.      On or about January 12, 2004, LC White Plains, through one of its

members, Louis L. Ceruzzi, Jr., also executed the Lease.

13.      Pursuant to the Lease, Filene's Basement rented from LC White

Plains approximately 77,468 square feet of retail space in the Center for the purpose of

operating the junior department store known as "Filene's Basement," a popular off-price

retailer.  Indeed, in Section 6 of the Lease, entitled "Use Of Leased Premises,"

specifically provided at Section 6.02 that "Tenant shall have the right to operate a junior

department store in the Center," and Section 6.01, in turn, provided that "Tenant agrees to

[ ] open as a Filene's Basement in the Leased Premises …."

14.    Pursuant to Section 3 of the Lease, the initial term of the Lease was to be ten (10) years, with Filene's Basement possessing four (4) consecutive options to extend the term of the Lease for successive renewal periods of five (5) years each.

15.    In consideration of Filene's Basement's use and occupancy of the Leased Premises, Filene's Basement agreed, among other things, to pay rent to LC White Plains in the form of fixed monthly payments as more fully set forth in Section 4.01 of the Lease (hereinafter "Base Rent").

16.    In addition, and also in consideration of Filene's Basement's use and occupancy of the Leased Premises, Filene's Basement agreed to pay LC White Plains a proportionate share, based on Filene's Basement's pro rata share of the leaseable square footage at the Center, of the costs that LC White Plains incurred in connection with: (a) maintenance of the common areas of the Center (hereinafter "Common Area Maintenance Costs," or "CAM Costs"); and (b) real estate taxes associated with the Center (hereinafter "Real Estate Taxes").

17.    Pursuant to Section 13 of the Lease, LC White Plains was required to reasonably estimate its total annual CAM Costs at the beginning of each Lease Year, and to provide to Filene's Basement, also at the beginning of each Lease Year, an estimate of Filene's Basement's proportionate share thereof (hereinafter Filene's "Proportionate Share of CAM Costs").  Filene's, in turn, was required to pay its Proportionate Share of CAM Costs in equal monthly installments.  Following the end of each full or partial Lease Year, however, LC White Plains was required to furnish Filene's Basement with an itemized statement of its own actual CAM Costs and, if the monthly estimates paid by Filene's Basement exceeded its proper Proportionate Share of

CAM Costs for any full or partial Lease Year based on LC White Plains' actual CAM Costs, LC White Plains was required to promptly pay such difference to Filene's Basement.

18.     Similarly, pursuant to Section 15 of the Lease, Filene's Basement was required to reimburse LC White Plains for its pro rata share of the Real Estate Taxes incurred by LC White Plains (hereinafter Filene's "Proportionate Share of Real Estate Taxes") as and when such taxes were incurred by LC White Plains.  Pursuant to Section 15.01(a) of the Lease, however, Real Estate Taxes were to be "apportioned for any partial tax year … so that Tenant's liability therefor shall be only for such portions thereof as shall be attributable to the term" of the Lease.  Moreover, pursuant to Section 15.02 of the Lease, "Real Estate Taxes shall be prorated for any partial tax years and, if applicable, the Landlord shall promptly return to the Tenant any overpayment made by the Tenant."

19.     In exchange for Filene's Basement's use and occupancy of the Leased Premises – and its agreement to pay Base Rent, its Proportionate Share of CAM Costs, and its Proportionate Share of Real Estate Taxes – LC White Plains covenanted to, among other things, restrict the use of space within the Center for the benefit of Filene's Basement.  Indeed, as set forth in Section 6.03 of the Lease, LC White Plains, as Landlord, had agreed to grant various tenants within the Center (including those who had leased more than 25,000 square feet therein) with certain "primary use exclusives," pursuant to which LC White Plains had agreed to restrict others who leased space in the Center from carrying on any trade or business of the kind conducted by the tenant-beneficiaries of such "exclusives."  Because Filene's Basement had agreed to lease over 77,000 square feet of space within the Center, and as a material inducement to Filene's

Basement's decision to do so, LC White Plains agreed to grant Filene's Basement a similar "exclusive."

20.     Specifically, in Section 6.02 of the Lease, LC White Plains agreed that Filene's Basement would have "the right to operate a junior department [store] in the Center, *subject to and as more fully described in Section 37.01*." (emphasis added).  In Section 37.01 of the Lease, in turn, LC White Plains expressly covenanted, under the heading "RESTRICTED USES," that:

> [S]o long as Tenant is regularly operating its business as a junior department store in the Leased Premises during reasonable business hours, Landlord will not lease any space within the Center or permit any space within the Center to be used by any person, persons, partnership or entity for use as a junior department store, such as the type of business currently operated by TJ Maxx, Marshall's, Loehman's Daffy Dan's and Century 21.

Moreover, LC White Plains further expressly covenanted in Section 37.01 that:

> Any portion of the Center which is sold by Landlord during the term [of the Lease] shall contain a deed restriction incorporating the foregoing exclusive.

21.     Similarly, in Section 31 of the Lease, LC White Plains further covenanted that "The Landlord represents … (vi) that the Landlord has not entered into, and shall not hereafter prior to expiration or termination of this Lease enter into, any leases, agreements or restrictive covenants that would prohibit or interfere with the use of the Leased Premises by the Tenant as a retail junior department store location."

22.     On or about April 28, 2004, Filene's Basement commenced operations of a Filene's Basement junior department store in the Leased Premises.

23.     Between April 28, 2004 and the present, Filene's Basement has at all times continuously operated a Filene's Basement junior department store in the

13

Leased Premises during reasonable business hours, and has duly performed all of its

obligations under the Lease including, without limitation, its obligation to pay Base Rent,

its Proportionate Share of CAM Costs, and its Proportionate Share of Real Estate Taxes.

24.    In or about January or February 2008, LC White Plains entered

into an agreement to lease approximately 35,000 square feet of retail space in the Center

– consisting of space adjacent to the Leased Premises – to Nordstrom, Inc. or an affiliate

thereof (hereinafter "Nordstrom") for the purpose of allowing that entity to operate a

"Nordstrom Rack" store, an off-price retail junior department store that serves as one of

the Filene's Basement's primary (if not chief) competitors.

25.    Upon learning of the lease between LC White Plains and

Nordstrom (hereinafter the "Nordstrom Rack Lease"), Filene's Basement notified LC

White Plains, by e-mail dated February 21, 2008, and again by letter dated February 27,

2008 from Filene's Basement's Ohio outside counsel, that execution of the Nordstrom

Rack Lease constituted a material breach of the Lease, including the "exclusive use"

covenant contained in Section 37.01.

26.    Thereafter, by letter dated February 29, 2008, Filene's Basement

again notified LC White Plains that execution of the Nordstrom Rack Lease constituted a

material breach of the Lease, including a breach of Section 37.01.  In the same letter,

Filene's Basement also notified LC White Plains that, in accordance with the provisions

of Sections 17.01(i) and 37.04 of the Lease, if LC White Plains did not cure the breach

caused by its execution of the Nordstrom Rack Lease within thirty (30) days, LC White

Plains would be in default under the Lease, and Filene's Basement would exercise its

14

various rights and remedies, including the remedies set forth in Section 37.04 of the Lease.

27.    Section 37.04 of the Lease expressly provides, in pertinent part, that:

> [I]n the event of a breach of this Section 37, Tenant's remedies at law would be inadequate. Therefore, in any such event, if such breach is not cured within thirty (30) days after written notice from Tenant to Landlord, Tenant shall, so long as a violation of Section 37.01 shall be on-going, be entitled, at its option, to (i) subject to the last sentence of this Section, for a period of up to one (1) year, to elect to pay in lieu of Base Rent and percentage rent due under this Lease four percent (4%) of Tenant's gross sales calculated according to Tenant's standard procedures in accordance with generally accepted accounting principles, (ii) subject to those matters provided for below, to cancel this Lease on thirty (30) days written notice to Landlord, and/or (iii) to full and adequate relief by temporary or permanent injunction . . . .

28.    LC White Plains has never denied that it executed the Nordstrom Rack Lease. Moreover, on or about April 3, 2008, Louis Cappelli, a principal of LC White Plains, orally acknowledged to a representative of Filene's Basement that LC White Plains' execution of the Nordstrom Rack Lease ran afoul of the terms of the Lease, had "caused a problem," and that LC White Plains wanted to "make it right." However, LC White Plains never took, and to date has not taken, any steps to cure its material breaches of the Lease. Instead, in written correspondence dated February 27, 2008 and March 5, 2008, LC White Plains denied, and on information and belief continues to deny, that its execution of the Nordstrom Rack Lease constituted a breach of the exclusive use provision contained in Section 37.01 of the Lease, ostensibly because LC White Plains does not consider Nordstrom Rack to be a "junior department store" as that term is used in Section 37.01 but, rather, "an 'off-price promotional retailer.'"

15

29.     On April 28, 2008, more than thirty (30) days having already elapsed since LC White Plains was put on notice of its material breach of the Lease, Filene's Basement formally notified LC White Plains, in writing and in accordance with the provisions of Section 18 of the Lease, that: (a) LC White Plains had defaulted and remained in default under the Lease by reason of its failure and refusal, as more fully described above, to honor its obligations under the Lease, including, without limitation, its obligations to observe and perform the provisions, covenants and conditions contained in Sections 37.01 and 31(vi) thereof; and (b) in accordance with its rights and remedies under Section 37.04 of the Lease (but without waiver of any of its other rights or remedies under the Lease, all of which Filene's Basement expressly reserved), Filene's Basement elected to cancel the Lease, effective as of August 31, 2008, and to pay to LC White Plains the alternative rent set forth in Section 37.04(i) of the Lease from March 30, 2008, the date of LC White Plains's default, through August 31, 2008.

30.     As of April 28, 2008, Filene's Basement had already paid Base Rent for the period April 1, 2008 through April 30, 2008.  For each monthly period commencing on May 1, 2008, however – *i.e.*, for the months of May 1, 2008 through May 31, 2008, June 1, 2008 through June 30, July 1, 2008 through July 31, 2008, and August 1, 2008 through August 31, 2008 – Filene's Basement has paid LC White Plains monthly rent in an amount equal to 4% of Filene's Basement's gross monthly sales from the Leased Premises, as provided for in Section 37.04 of the Lease.

31.     Between April 28, 2008 and July 3, 2008, LC White Plains never asserted that Filene's Basement did not have the right to cancel the Lease or pay the alternative rent prescribed by Section 37.04 thereof, despite the fact that Filene's

Basement reiterated it was doing so in monthly letters sent to LC White Plains on June 5, 2008, July 1, 2008, and August 8, 2008, each of which set forth Filene's Basement's gross monthly sales at the Leased Premises and the corresponding calculation of monthly rent for those periods. In fact, LC White Plains remained totally silent in response to these letters and to Filene's Basement's April 28, 2008 notice of lease cancellation, and never demanded payment of Base Rent or otherwise responded to Filene's Basement's written communications.

   32. On or about July 3, 2008, LC White Plains commenced the instant action against Filene's Basement, contending for the first time that Filene's Basement did not have the right to terminate the Lease or pay the alternative rent prescribed by Section 37.04 thereof, and seeking the recovery of more than $500,000.00 in rent allegedly owed to LC White Plains for the period subsequent to April 28, 2008.

**FIRST COUNTERCLAIM**
**Declaratory Judgment**

   33. Filene's Basement repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 32 above.

   34. As more fully set forth above, Filene's Basement has asserted that LC White Plains's conduct in entering into the Nordstrom Rack Lease constituted a material breach of both the Lease, including the provisions of Sections 37.01 and 31(vi) thereof, as well as LC White Plains's implied covenant of good faith and fair dealing, and that these material breaches entitled Filene's Basement to, among other things, cancel the

17

Lease and pay the alternative rent prescribed by Section 37.04 of the Lease from the date of LC White Plains's default through the end of the Lease's term on August 31, 2008.

35. In contrast, LC White Plains has taken the position that its execution of the Nordstrom Rack Lease does not violate Section 37.01 of the Lease, so as to provide grounds for Filene's Basement to terminate the Lease or otherwise declare LC White Plains in default thereunder. In addition, as evidenced by the Complaint it filed on July 3, 2008, LC White Plains has taken the position that Filene's Basement was not permitted to pay the alternative rent specified in Section 37.04 of the Lease for the period between March 30, 2008 and August 31, 2008.

36. By virtue of the foregoing, there now exists an actual, justiciable controversy between Filene's Basement and LC White Plains relating to their respective legal rights, duties and obligations under the Lease, which controversy is now ripe for adjudication pursuant to 28 U.S.C. § 2201.

37. Filene's Basement thus requests a judgment declaring the rights and obligations of the parties under the Lease, including a declaration: (a) that LC White Plains's execution of the Nordstrom Rack Lease constituted a violation of Sections 37.01 and 31(vi) of the Lease, a material breach of (and default under) the Lease, and a material breach of LC White Plains' implied covenant of good faith and fair dealing; (b) that Filene's Basement's election to cancel the Lease, effective August 31, 2008, and to pay the alternative rent set forth in Section 37.04 of the Lease from March 30, 2008 through August 31, 2008 was valid and lawful; and (c) as of August 31, 2008 and following the payment of all sums required to be paid to LC White Plains under the terms of Section

37.04 of the Lease, Filene's Basement shall have no further obligations or liability whatsoever to LC White Plains under the Lease.

### SECOND COUNTERCLAIM
**Breach of Contract & Express Contractual Covenants**

38.     Filene's Basement repeats, realleges and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 37 above.

39.     As more fully set forth above, Filene's Basement gave formal written notice to LC White Plains, no later than February 29, 2008, that its execution of the Nordstrom Rack Lease would, and did, violate the provisions of, and the express contractual covenants contained in, Sections 37.01 and 31(vi) of the Lease, and constitute a material breach of the Lease.  On February 29, 2008, Filene's Basement further demanded that LC White Plains refrain from entering into, or cure its unlawful execution of, the Nordstrom Rack Lease.

40.     Notwithstanding the foregoing, LC White Plains entered into the Nordstrom Rack Lease and, to date, has not annulled or otherwise cancelled that agreement.  Upon information and belief, Nordstrom will be commencing operations of a Nordstrom Rack store in the Center on or about September 4, 2008.

41.     By virtue of the foregoing, LC White Plains has violated the provisions of, and the express contractual covenants contained in, Sections 37.01 and 31(vi) of the Lease, and has materially breached the express terms of the Lease.  In addition, LC White Plains has defaulted under the terms of the Lease in accordance with Section 17.01(i) thereof.

42.    As a direct and proximate result of LC White Plains' material and uncured breaches of, and default under, the Lease, Filene's Basement has been damaged by having to cancel the Lease and vacate the Leased Premises at substantial loss to Filene's Basement, including losses associated with: (a) the lost profits that Filene's Basement would otherwise have realized from continued operations in the Leased Premises absent breach by LC White Plains; and (b) costs and losses associated with the closure of the store located at the Leased Premises, which Filene's Basement would not have been forced to incur absent LC White Plains's breach, including, without limitation, costs and losses associated with: (i) efforts to liquidate or relocate merchandise that was to be offered for sale at the Leased Premises; (ii) efforts to remove and sell or relocate equipment, trade fixtures and personal property located at the Leased Premises; (iii) labor and human resources; and (iv) damages, penalties and/or financial accommodations or settlements paid to suppliers who were contracted to provide goods and/or services to Filene's Basement at the Leased Premises for fixed durations beyond August 31, 2008.

43.    Accordingly, Filene's Basement is entitled to damages on account of LC White Plains's breaches of the Lease in amount to be determined at trial but, in all events, in amount that exceeds $75,000, exclusive of interest and costs.

## THIRD COUNTERCLAIM
### Breach of Implied Covenant of Good Faith and Fair Dealing

44.    Filene's Basement repeats, realleges and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 43 above.

45.    Implied in every contract, including the Lease, is a covenant of good faith and fair dealing that prohibits each contracting party from doing anything that

will frustrate the contract or deprive the other contracting party of the reasonably expected benefits for which it bargained.

46.     As evidenced by the terms of the Lease, one central purpose of the Lease was to ensure that Filene's Basement would have the ability to operate a retail junior department store at the Center free from competition with its direct and primary competitors (*e.g.,* off-price retailers) and any other tenants of the Center. Indeed, as evidenced by Sections 6.02, 31(vi) and 37.01 of the Lease, Filene's Basement bargained for, and LC White Plains offered as a material inducement to the Lease, the right to be the exclusive operator of a junior department store in the Center.

47.     In addition, Filene's Basement bargained for LC White Plains's commitment to refrain from leasing space in the Center to anyone who might operate a business that would impair or interfere with Filene's operations as a retail junior department store – including Filene's direct competitors – even if entering into such a lease presented LC White Plains with a lucrative opportunity, or one that was more profitable to LC White Plains than the Lease.

48.     Furthermore, as set forth above, Filene's Basement bargained for the right to operate in the Leased Premises under the terms and conditions set forth in the Lease for a minimum period of ten (10) years and, at its option, for an additional period of up to twenty (20) more years.

49.     In entering into the Nordstrom Rack Lease, LC White Plains frustrated Filene's Basement's bargained-for and reasonably expected ability to be the exclusive operator of a retail junior department store at the Center, free from competition

with its direct and primary competitors (*e.g.*, off-price retailers) and other tenants of the Center.

      50.     Upon information and belief, LC White Plains entered into the Nordstrom Rack Lease intentionally and in bad faith, knowing it was prohibited from doing so by the terms of the Lease and with full knowledge of the materially adverse and injurious effects that the Nordstrom Rack Lease, and the concomitant operation of a Nordstrom Rack store in the Center, would have on Filene's Basement, its business, and its use and occupancy of the Leased Premises.

      51.     Upon information and belief, LC White Plains further entered into the Nordstrom Rack Lease intentionally and in bad faith, for the improper purpose of recapturing opportunities foregone at the time it negotiated and entered into the Lease with Filene's Basement, including for the improper purpose of: (a) taking advantage of a lucrative opportunity to lease space in the Center to one of Filene's Basement's direct competitors without regard to the adverse impact such an opportunity would have on Filene's Basement; and (b) inducing Filene's Basement to terminate the Lease so as to allow LC White Plains to avoid being "stuck" with what it perceived as the unfavorable terms and conditions of the Lease for a minimum of ten (10) years and, in the event Filene's Basement exercised its options to extend the term of the Lease, for as long as thirty (30) years, while simultaneously permitting LC White Plains to rent the Leased Premises to an alternative prospective tenant under more advantageous terms and conditions.

52.    By reason of the foregoing, LC White Plains breached its implied obligations of good faith and fair dealing to Filene's Basement in entering into the Nordstrom Rack Lease.

53.    As a direct and proximate result of LC White Plains's breach of the implied covenant of good faith and fair dealing, Filene's Basement has been damaged in an amount to be determined at trial but which, in all events, exceeds $75,000 exclusive of interest and costs.

## FOURTH COUNTERCLAIM
### Restitution

54.    Filene's Basement repeats, realleges and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 53 above.

55.    As more fully set forth above, in each month since the inception of the Lease, Filene's Basement has paid LC White Plains, as required by LC White Plains under the terms of the Lease, substantial sums of money, including money paid on account of Base Rent, Filene's Proportionate Share of CAM Costs, and Filene's Proportionate Share of Real Estate Taxes.

56.    As more fully set forth above, as a result of LC White Plains's breach of Section 37.01, Filene's Basement was entitled to, and on April 28, 2008, formally elected to, pay LC White Plains the alternative rent specified in Section 37.04 of the Lease for each month commencing after March 30, 2008.  As alleged hereinabove, however, Filene's Basement had already paid Base Rent for the month commencing April 1, 2008 prior to March 30, 2008.

57.    The Base Rent paid by Filene's Basement for the month commencing April 1, 2008 exceeded the alternative rent provided for in Section 37.04 of the Lease (*i.e.*, 4% of gross sales from the Leased Premises during the month of April 2008) by $79,873.43. Accordingly, LC White Plains has been unjustly enriched and now holds $79,873.43 that, in equity and good conscience, properly belongs and should be returned to Filene's Basement.

58.    In addition, upon information and belief, the estimated monthly payments that Filene's Basement has made to LC White Plains on account of Filene's Proportionate Share of CAM Costs during the partial Lease Year ending August 31, 2008 exceed Filene's Basement's proper Proportionate Share of CAM Costs for that partial Lease Year. In equity and pursuant to Section 13.05 of the Lease, Filene's Basement is entitled to a refund of all amounts it paid in excess of its proper Proportionate Share of CAM Costs for any partial Lease Year. Accordingly, LC White Plains has been unjustly enriched and now holds additional money that, in equity and good conscience, properly belongs and should be returned to Filene's Basement.

59.    Furthermore, on December 13, 2007, Filene's Basement paid to LC White Plains the sum of $68,287.61, representing payment of Filene's Basement's Proportionate Share of County Real Estate Taxes owed for the full 2008 fiscal tax year (*i.e.*, January 1, 2008 through December 31, 2008). On February 21, 2008, Filene's Basement also paid to LC White Plains the additional sum of $225,858.63, representing payment of Filene's Basement's Proportionate Share of City and School Real Estate Taxes owed for the first half of the 2008 fiscal tax year (*i.e.*, July 1, 2008 through December 31, 2008). In equity and according to the provisions of Sections 15.01 and

24

15.02 of the Lease, however, Filene's Basement is liable only for such portions of Real Estate Taxes as are attributable to the term of the Lease, and Real Estate Taxes must be prorated for any partial tax years.

      60.     By virtue of LC White Plains's material breach of the Lease and Filene's Basement's resultant cancellation of the Lease as of August 31, 2008, the term of the Lease expires as of August 31, 2008. Consequently, Filene's Basement is not liable for any Proportionate Share of Real Estate Taxes attributable to any period beyond August 31, 2008, and, by reason of the foregoing payments, has overpaid LC White Plains in the approximate amount of $173,334.96.

      61.     In equity and in accordance with Section 15.02 of the Lease, after prorating Real Estate Taxes to account for any partial tax year, LC White Plains is required to promptly return to Filene's Basement any overpayment in its Proportionate Share of Real Estate Taxes. To date, however, LC White Plains has not done so. LC White Plains has thus been unjustly enriched and now holds an additional approximately $173,334.96 that, in equity and good conscience, properly belongs to, and should be returned to, Filene's Basement.

      **WHEREFORE**, Filene's Basement, prays for the following relief:

    A.     On LC White Plains's First Cause of Action, an order dismissing the claim, with prejudice, in its entirety and awarding Filene's Basement costs and expenses, including its reasonable attorneys' fees;

25

B.      On LC White Plains's Second Cause of Action, an order dismissing the claim, with prejudice, in its entirety and awarding Filene's Basement costs and expenses, including its reasonable attorneys' fees;

C.      On Filene's Basement's First Counterclaim, a judgment declaring: (a) that LC White Plains's execution of the Nordstrom Rack Lease constituted a violation of Sections 37.01 and 31(vi) of the Lease, a material breach of (and default under) the Lease, and a material breach of LC White Plains' implied covenant of good faith and fair dealing; (b) that Filene's Basement's election to cancel the Lease, effective August 31, 2008, and to pay the alternative rent set forth in Section 37.04 of the Lease from March 30, 2008, the date of LC White Plains' default under the Lease, was valid and lawful; and (c) that, as of August 31, 2008 and following the payment of all sums required to be paid to LC White Plains under the terms of Section 37.04 of the Lease, Filene's Basement shall have no further obligations or liability whatsoever to LC White Plains under the Lease;

D.      On Filene's Basement's Second Counterclaim, a judgment awarding Filene's Basement compensatory damages in an amount to be proven at trial;

E.      On Filene's Basement's Third Counterclaim, a judgment awarding Filene's Basement compensatory damages in an amount to be proven at trial;

F.      On Filene's Basement's Fourth Counterclaim, a judgment awarding Filene's Basement restitution of all amounts overpaid to LC White Plains and belonging, in equity and good conscience, to Filene's Basement; and

F.      Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
   August 12, 2008

           Respectfully submitted,

           David R. Fertig
           J. Philip Rosen
           Weil, Gotshal & Manges LLP
           767 Fifth Avenue
           New York, New York 10153
           Tel. (212) 310-8000
           Fax (212) 310-8007
           e-mail: david.fertig@weil.com
           e-mail: Philip.rosen@weil.com

           *Attorneys for Defendant,*
           *Filene's Basement, Inc.*